# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| WINNEMUCCA FARMS, INC., a Nevada Corporation, | 3:05-CV-0385-RAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| LANCE ECKERSELL, ECKERSELL GROUP, INC., ARMtech INSURANCE SERVICES, INC., GUIDEONE SPECIALTY MUTUAL INSURANCE CO., WESTERN MUTUAL INSURANCE CO., AMERICAN AGRI-BUSINESS INSURANCE CO., and DOES 1-30, inclusive, | |
| Defendants. | |
| AND RELATED MATTERS | |

Before the court is Defendants', Lance Eckersell and Eckersell Insurance Group, Inc. (collectively the "Eckersell Defendants"), Supplemental Motion for Partial Summary Judgment (Re: Indemnification) (Doc. #78). Defendants/Counterclaimants ARMtech joined in the motion (Doc. #79). Plaintiff responded to the motion (Doc. #82) and Defendants replied (Docs. #85, 86).

## I. BACKGROUND

### A. Factual Background

Plaintiff is a large potato farming corporation that owns approximately 20,000 acres of farmland (Doc. #78 at 2). In 2001, Plaintiff sought insurance coverage for its crops

through the Eckersell Defendants, as insurance agents, and a policy was issued to Plaintiff by the ARMtech Defendants, as the insurer, subject to the Federal Crop Insurance Act (FCIA) (Doc. #86 at 5).

Plaintiff alleges that, beginning in 2001 and continuing through 2003, Defendants (collectively) misrepresented to Plaintiff that it would receive full benefits for losses to crops covered by the insurance policy (Doc. #23 at 5). Plaintiff further alleges Defendants devised a plan to create insurable entities in order to increase the number of entities with which they would issue insurance coverage, thus maximizing Plaintiff's potential insurance recovery in the event of crop loss (*Id.*, Doc. #78 at 2). Plaintiff asserts Defendants assured it that these entities were in compliance with the policies and guidelines of the Federal Crop Insurance Corporation (FCIC) (Doc. #23 at 5). Plaintiff further asserts Defendants represented to it that it did not matter whether the named-entities on the insurance applications were legitimate entities, nor did it matter if those entities had any actual risk of loss (Doc. #78 at 2). In 2004, Plaintiff informed the Farm Service Agency and Defendant ARMtech that the entity structure used to obtain the insurance policy was invalid because the named-entities had no actual risk of loss and were not actively engaged in farming (*Id.* at 3).

Plaintiff alleges that Defendants' negligence or intentional misconduct of advising it that the plan to create multiple insurable entities was valid deprived Plaintiff of additional insurance benefits in 2002, misled Plaintiff into paying for crop insurance coverage for entities that were not properly named insureds under the policy in 2003, and precluded Plaintiff from obtaining any insurance benefits in 2004 (Doc. #23 at 4). One of the claims Plaintiff asserts against Defendants, which is the subject of the instant motion, is for indemnification in the event the federal government sues Plaintiff for reimbursement of benefits paid in 2002 and 2003 (*Id.* at 6).

**B.  Relevant Procedural Background**

In November of 2006, Defendants filed motions for summary judgment on all of Plaintiff's claims, including his indemnity claim (Docs. # 49, 51). On September 18, 2007,

the district court denied both motions (Doc. #75). In its order, the district court found the claim for indemnity may turn on whether an express indemnity provision exists in the relevant policies (Doc. #75 at 3). Accordingly, the district court denied summary judgment on Plaintiff's third claim for relief with the instruction that it would revisit the issue if prompted to do so by a properly supported motion for summary judgment submitted no later than October 19, 2007 (*Id.*). The instant motion was filed on October 19, 2007 (Doc. #78).

## II. STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

## III. DISCUSSION

Defendants move for summary judgment on Plaintiff's indemnity claim asserting no express indemnification agreement exists between the parties; thus, Plaintiff has no standing to assert contractual indemnity rights (Doc. #78). Defendants further assert that, even if indemnity exists, Plaintiff is not entitled to indemnity because Plaintiff has not paid any money to the federal government and the federal government has not brought suit against Plaintiff to collect on any such claim (*Id.* at 7). Finally, Defendants assert that, even if indemnity exists, Plaintiff has no standing to bring this claim because Plaintiff has not incurred any damages (*Id.*).

Plaintiff argues that, in cases where the indemnitee's claim is founded upon a written agreement with an indemnity clause, the indemnitee need only show potential, rather than actual liability (Doc. #82 at 2). Plaintiff also argues the crop insurance agreement includes the Code of Federal Regulations, which gives the federal government an automatic claim for indemnity once fraud is established (*Id.*). Plaintiff contends the insurance policy does not shift the risk of loss to the insured with respect to an improper entity structure and the standard reinsurance agreement set forth by the FCIA makes clear that the reinsurer owes

1    indemnity if it fails to comply with the Act (Doc. #82 at 2). Plaintiff further contends the
2    insurance policy contemplates the possibility of payment of indemnity and only exculpates
3    the insurer from paying damages, attorney's fees, or "other charges" in connection with an
4    indemnity claim and not from liability or payment of restitution and benefits due under the
5    policy (*Id.* at 5). Plaintiff acknowledges that the Eckersell Defendants are an independent
6    insurance agency and are an entity wholly separate and apart from the insurer; thus, Plaintiff
7    asserts contracts between the insured and the agent have no bearing on the liability of the
8    insurer to the insured and vice versa (*Id.*). Finally, Plaintiff contends that, although Nevada
9    does not have an express statute invalidating the exculpatory provision at issue,
10   indemnification agreements that purport to indemnify a party for damages flowing from the
11   intentional causation of injury by that party are unenforceable as violative of public policy
12   (*Id.* at 6). Plaintiff's theory behind his Third Claim for Relief is that if the federal government
13   requires Plaintiff to pay the benefits back, Defendant should be held liable for the amount of
14   that payment, or at least the amount of all premiums paid with respect to the years in
15   question (*Id.* at 9). Plaintiff contends to hold otherwise would unjustly enrich Defendants
16   (*Id.*).

17   The Eckersell Defendants respond that Plaintiff cannot assert a contractual indemnity
18   exception to the general indemnity rule because no contract exists between them and Plaintiff
19   (Doc. #85 at 2-3). The Eckersell Defendants further respond that Plaintiff cannot assert an
20   implied indemnity claim against them because a claim for implied indemnity does not accrue
21   until something is actually paid and, here, nothing has been paid (*Id.* at 3).

22   The ARMtech Defendants respond that Plaintiff has not requested recission or
23   restitution in its prayer for relief and Defendants do not expressly or impliedly consent to try
24   any issues related to these new, unasserted claims (Doc. #86 at 2). The ARMtech Defendants
25   further respond that the indemnity sought by Plaintiff is expressly limited in the insurance
26   policy to damage or loss to an insured crop and simple interest on the net indemnity
27   ultimately found to be due (*Id.* at 6). Furthermore, the ARMtech Defendants contend that
28

5

Subpart P of 7 C.F.R. pt. 400 (2008) prohibits the court from invalidating any provision of the insurance policy based upon public policy with respect to insurance fraud and general principles governing equitable indemnity as cited by Plaintiff in various state and federal cases that were decided based upon state law (Doc. #86 at 7-8). The ARMtech Defendants assert that Plaintiff's claim for implied contractual indemnity also fails because the law will not imply a right of indemnity where the parties have entered into a written contract with express indemnification provisions and, even if the federal government eventually seeks reimbursement from Plaintiff, Plaintiff will be precluded from any claim for equitable indemnity if it is found to have intentionally concealed or misrepresented any material fact related to the insurance policy (*Id.* at 9). Finally, the ARMtech Defendants assert that there is no legal basis for Plaintiff to seek "reimbursement" for a contingent, uncertain claim brought by the federal government where the federal government is not a party to this action and has not brought any claims against Plaintiff (*Id.* at 9-10).

Plaintiff asserts its indemnity claim against all Defendants, generally; however, Plaintiff's claim for indemnity against each Defendant rests upon differing legal doctrines of indemnity. Thus, the court will address the two sets of Defendants (the Eckersell Defendants and the ARMtech Defendants) in turn based upon the type of indemnity Plaintiff seeks.

**A.     The Eckersell Defendants – Implied Indemnity**

Plaintiff admits the Eckersell Defendants are an independent insurance agency, wholly separate and apart from the ARMtech Defendants (Doc. #82 at 5). Plaintiff further admits that, in Nevada, the insurance contract between the ARMtech Defendants and Plaintiff has no bearing on the Eckersell Defendants liability to Plaintiff (*Id.*). Thus, Plaintiff must base any claim for indemnity against the Eckersell Defendants on Nevada's doctrine of equitable or implied indemnity.

In Nevada, "equitable indemnity is a judicially-created construct to avoid unjust enrichment." *Medallion Development, Inc. v. Converse Consultants*, 113 Nev. 27, 930 P.2d 115, 119 (1997) (citing *Piedmont Equip. Co. v. Eberhard Mfg.*, 99 Nev. 523, 665 P.2d 256, 259

6

(1983)); *see also Scaffidi v. United Nissan,* 425 F. Supp. 2d 1159, 1171 (D. Nev. 2005). "When one party is subject to liability, which, as between that party and another, the other should bear, the first party is entitled to full indemnity." *Black & Decker (U.S.), Inc. v. Essex Group, Inc.,* 105 Nev. 344, 345, 775 P.2d 698, 699 (1989). Nevada expressly recognizes "a right to indemnification in agency-type relationships (master-servant; principal-agent; independent contractors) if the liability is imposed upon one of the parties *solely* because of his legal relationship to the person who has committed the tortious act." *Reid v. Royal, Ins. Co.,* 80 Nev. 137, 142, 390 P.2d 45, 48 (1964) (emphasis in original). However, Nevada law does not limit implied indemnity to those stated relationships. In interpreting Nevada law, the Ninth Circuit opined:

> The equitable nature of implied indemnity ... precludes the use of ... strict standards.... The principle of implied equitable indemnity is designed to prohibit one from profiting by his own wrong at the expense of one who is either free from fault or negligent to a lesser degree. In evaluating a claim for implied indemnity, courts must carefully examine both parties' conduct on a case-by-case basis, with the ultimate goal of doing what is fair or just. While it is true that the obligation to indemnify clearly arises in certain situations, for example, when a master-servant relationship exists, implied equitable indemnity may be entirely proper if it is simply fairer to shift the burden of loss.

*Hydro-Air Equipment, Inc. v. Hyatt Corp.,* 852 F.2d 403, 406 (9th Cir. 1988) (internal citations omitted). Thus, under Nevada law, Plaintiff may have a viable claim for implied indemnity against the Eckersell Defendants. However, the court need not reach the issue of viability because Plaintiff's claim is not ripe for adjudication.

First and foremost, under Nevada law, "a cause of action for [implied] indemnity ... accrues when payment has been made." *Aetna Cas. and Sur. Co. v. Aztec Plumbing Corp.,* 106 Nev. 474, 476-477, 796 P.2d 227, 229 (1990). It is undisputed that no payment has been made.

Second, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *see also Scott v. Pasadena United Sch. Dist.,* 306 F.3d 646, 662 (9th Cir. 2002). In cases where courts have found indemnity claims not ripe for adjudication, the

underlying claims were either instituted in different suits or had not been instituted at all. *Hecht v. Summerlin Life and Health Ins. Co.,* 536 F. Supp. 2d 1236, 1240-1241 (D. Nev. 2008). Here, the underlying claim has not been instituted at all.

Plaintiff expressly states that "[t]he theory of the Third Claim for Relief here is that *if* the Federal Government requires Winnemucca Farms to pay the benefits back, then the Defendants have been unjustly enriched at Winnemucca Farms' expense." (Doc. #82 at 9 (emphasis added)). Plaintiff has provided no evidence that the federal government has instituted suit against him, nor has he provided evidence that the federal government intends to do so. Accordingly, Plaintiff's indemnity claim against the Eckersell Defendants is not ripe; thus, summary judgment on Plaintiff's indemnity claim against the Eckersell Defendants is **GRANTED**.

B. **ARMtech Defendants - Contractual Indemnity**

Plaintiff bases his indemnity claim against the ARMtech Defendants on a theory of contractual indemnity, as Plaintiff acknowledges the insurance agreement contemplates the possibility of indemnity and exculpates the insurer from paying damages, attorney's fees or other charges (Doc. #82 at 5).

When parties expressly deal with the question of indemnity in a written contract, the Ninth Circuit concludes that they intended what was expressed in their agreement, not that some common law rule should govern their rights and liabilities. *Booth-Kelly Lumber Co. v. Southern Pacific Co.*, 183 F.2d 902, 906-907 (9th Cir. 1950) ("We also agree with the court below that the question of liability is not to be determined under any common law obligation apart from the contract. We think it important to examine the rules of the common law in order more accurately to determine the meaning of the written contract. This we shall develop hereafter. But, since the parties have themselves dealt with the question of indemnity in their written contract, we think it is fair to say that they intended it, rather than some general common law rule, to govern their rights and liabilities in this situation."). Thus,

1 in light of the insurance agreement in this case, the doctrine of implied indemnity is
2 inapplicable as to the ARMtech Defendants. *Booth-Kelly*, 183 F.2d at 907.

3 Nevada law has long held that proof of payment is not required in a claim for
4 contractual indemnity or indemnification against liability; however, a right of action does not
5 accrue until the indemnitee becomes legally liable for damages. *Jones v. Childs*, 8 Nev. 121,
6 125 (1872) ("[T]he cause of action is complete when the liability is established, and therefore
7 that no actual damage or payment of the liability need be shown."); *see also Continental
8 Casualty Co. v. Farnow*, 79 Nev. 428, 386 P.2d 90 (1963); *Sanchez v. Alonso*, 96 Nev. 663,
9 667-668, 615 P.2d 934, 937 (1980).

10 As previously stated, the underlying claim has not been instituted by the federal
11 government and Plaintiff has provided no evidence the federal government intends to
12 institute suit against him for reimbursement of paid benefits. Furthermore, Plaintiff has not
13 established that he is liable to the federal government for damages or payments of benefits
14 received under the insurance agreement. Thus, Plaintiff's right of action, if any, against the
15 ARMtech Defendants for indemnity does not accrue until Plaintiff becomes legally liable to
16 the federal government for damages. Accordingly, for the same reasons set forth above with
17 respect to the Eckersell Defendants, Plaintiff's claim for contractual indemnity against the
18 ARMtech Defendants is not ripe for adjudication.

19 Because Plaintiff's indemnity claim is not ripe, the court need not address Plaintiff's
20 public policy arguments for finding the indemnification provision unenforceable and
21 summary judgment on Plaintiff's indemnity claim against the ARMtech Defendants is
22 **GRANTED**.
23 ///
24 ///
25 ///
26 ///
27 ///
28

9

## IV. CONCLUSION

For the reasons set forth above, Defendants' Supplemental Motion for Partial Summary Judgment (Re: Indemnification) (Doc. #78) is **GRANTED**.

DATED: May 14, 2008.

_____
UNITED STATES MAGISTRATE JUDGE