**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| WINNEMUCCA FARMS, INC., | 3:05-CV-385-RAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| LANCE ECKERSELL, ECKERSELL GROUP, INC., ARMtech INSURANCE SERVICES, INC., GUIDEONE SPECIALTY MUTUAL INSURANCE CO., WESTERN NATIONAL MUTUAL INSURANCE CO., AMERICAN AGRI-BUSINESS INSURANCE CO., and DOES 1-30, inclusive, | |
| Defendants. | |

This matter is before the court on motions for summary judgment by Defendants Lance Eckersell and Eckersell Group, Inc. ("Eckersell") (Doc. #127[1]) and Defendants ARMtech Insurance Services, Inc., Guide One Specialty Insurance Co., Western National Mutual Insurance Co., and American Agribusiness Insurance Co. (collectively "ARMtech") (Doc. #128). Plaintiff Winnemucca Farms, Inc. ("WFI") has filed a joint opposition (Doc. #138), and Eckersell and ARMtech have replied (Doc. #142 and 143).[2] Having considered the papers and the arguments presented therein, and with good cause appearing, the court denies both motions.

---

[1] Refers to court's docket number.

[2] Eckersell has joined in Section VII of ARMtech's motion entitled "Plaintiff Cannot Prove Justifiable or Reasonable Reliance." (Doc. #129.)

# I. BACKGROUND

The court will examine the facts in the light most favorable to WFI, the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). This action arises out of crop insurance purchased by WFI from the ARMtech defendants. WFI is a potato-farming corporation owning approximately 20,000 acres of farmland in Winnemucca, Nevada.[3] John O'Brien ("O'Brien") is its President and Sam Rouston is its Chief Administrative Officer and Legal Counsel. The ARMtech defendants are insurance companies that issued policies to WFI and its various associated entities. Defendant Eckersell is an insurance agent who was acting as ARMtech's independent contractor at all relevant times. (Doc. #128 at 7-10.)

The policies involved in this case were issued by private insurers and reinsured by the Federal Crop Insurance Corporation (FCIC) as part of a government program established by the Federal Crop Insurance Act (FCIA). Federal law defines and governs the sale, issuance, and service terms of the policies. *Nobles v. Rural Comm. Ins. Servs.*, 122 F.Supp.2d 1290, 1295 (M.D.Ala. 2000). The FCIC is a government corporation operating under the Department of Agriculture's Risk Management Agency (RMA), which is statutorily responsible for regulating the crop insurance industry. *In re Peanut Crop Ins. Lit.*, 524 F.3d 458, 462 (4th Cir. 2008). The purpose of the crop insurance program is to protect farmers from the risk of drought, flood, and other natural disasters. *Id.* (citing 7 U.S.C. § 1508(b)). Basic coverage insures farmers against catastrophic risk and losses exceeding 50% of the crop's normal yield at 55% of the crop's expected market price. 7 U.S.C. § 1508(b); 7 C.F.R. § 402.1. Farmers may purchase additional coverage to insure a greater percentage of their expected yields. 7 U.S.C. § 1508(c).

///
///
///

---

[3] Unless otherwise noted, the facts are taken primarily from Eckersell's original motion for summary judgment (Doc. #49) and WFI's opposition (Doc. #66) and the exhibits attached thereto, as well as the motions currently before the court.

In 2001, WFI first hired Eckersell as an expert in crop insurance to obtain coverage against future crop losses stemming from inclement weather. WFI claims that Eckersell and ARMtech erroneously advised it to create a network of multiple agricultural entities to maximize its insurance recovery in the event of a crop loss. The complaint alleges that this structure created a favorable premium and fee arrangement for Eckersell and the insurance company defendants. (Doc. #23-2 at 3.) According to WFI, throughout the course of their dealings with him, Eckersell repeatedly assured its officers that these various entities had been properly created and had an insurable interest in the crop. (Doc. #138, Ex. 2, p. 108: 8-9; *id.* at 109: 3-12; Ex. 3, p. 57.)

To obtain the crop insurance for the various entities, WFI was directed by Eckersell in 2002 to obtain a tax Employer Identification Number (EIN) from the Internal Revenue Service for an entity known as Paradise Valley Farms. At the time that the application was submitted, Paradise Valley Farms was merely a brand name and did not participate in the agricultural activities or possess the legal structure indicated by the EIN form. This EIN was used to procure an insurance policy for Paradise Valley Farms for the 2003 crop year. Another policy was procured for RDO Nevada, Inc, a previously formed Nevada corporation holding shares in WFI. (Doc. #128 at 12.) In 2003, WFI officers authored leases and share crop agreements for various other entities created for insurance purposes, including Paradise Valley Farms. (Doc. #127 at 5.) The leases were submitted to the federal government as proof that the entities had an insurable interest in the crops, allowing WFI and RDO Nevada to collect $2.8 million in indemnity payments for the 2003 crop year.

In 2004, WFI obtained EINs for Paradise Valley II and Cowboy Farms, which were also brand names utilized by WFI. Insurance policies were obtained for the 2004 crop year for Cowboy Farms, RDO Nevada, Inc., Paradise Valley Farms, U.S. Foods, Inc., and Paradise Valley II. (Doc. #128 at 13.) Business account applications were submitted for Paradise Valley Farms, Paradise Valley II, and Cowboy Farms that contained false information about the activities,

3

employees, and income for these entities. (Doc. #127 at 6-7.) In December 2004, the EINs for Cowboy Farms and Paradise Valley II were cancelled.

WFI submitted claims from weather-related crop damage using the multiple-entity structure in 2002 and 2003, receiving $1.7 million and $2.8 million in insurance benefits. (Doc. #128 at 13.) After paying premiums for the 2004 crop year, WFI discovered that its associated entities were not insurable in part because they were not legal entities with an insurable interest in the crops. (Doc. #49 at 3.) As a result, its insurers and the federal government refused to pay any benefits. WFI alleges that it lost $1.3 million in indemnity that it should have received for crop losses in 2004.[4]

Eckersell initially filed a summary judgment motion on November 5th, 2006 (Doc. #49), in which ARMtech joined (Doc. #51). ARMtech also filed a motion for summary judgment on November 15th, 2006 (Doc. #55), in which Eckersell joined. The court, the Honorable Brian E. Sandoval presiding, denied the motions, finding that there remained material issues of fact with respect to WFI's first two claims and that the last claim could not be adjudicated based on the record available. (Doc. #75.) Eckersell filed a Supplemental Motion for Partial Summary Judgment on the third claim regarding indemnification, which was granted (Doc. #78). Subsequently, at a hearing regarding a motion to stay the proceedings, the court granted Defendants leave to file supplemental motions for summary judgment. (Doc. #116.)

## II. DISCUSSION

WFI has alleged causes of action based on negligent and intentional misrepresentation in its amended complaint (Doc. #23-2). WFI alleges that from 2002 through 2004, it was misled by Defendants into creating multiple business entities to apply for crop insurance. This allegedly deprived WFI of additional insurance benefits in 2002, misled WFI into paying for crop insurance coverage for entities that were not properly named insureds under the policy

---

[4] WFI also alleges that under the proper single-entity structure, it would have received $55,299 in additional insurance for 2002 and a reduction of $655,977 in benefits for 2003. (Doc. #66 at 14.)

4

in 2003, and precluded Plaintiff from obtaining any insurance benefits in 2004 (Doc. #23 at 4.) WFI also seeks reformation of the insurance policies to reflect a properly named insured and indemnification by the defendants should it be required to return the benefits it received from the claims for the erroneously insured entities.

**A.   LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi*, 84 F.3d at 1197.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

/ / /

5

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

## B. UNCLEAN HANDS / IN PARI DELICTO DEFENSES

The doctrine of unclean hands bars equitable relief for a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted. *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989) (citations omitted). ARMtech relies on this principle in arguing that WFI cannot raise equitable estoppel[5] against ARMtech because WFI participated in various acts of misconduct in procuring the crop insurance policies.[6] Similarly, Eckersell invokes the principle of *in pari delicto*, the legal counterpart to unclean hands, to argue that WFI's malfeasance should preclude recovery on its claims. The parties do not dispute that a culpable state of mind is required for either doctrine to apply. *See In re Agribiotech, Inc.*, 2005 WL 4122438, at *13 (D.Nev. April 1, 2005) (Nevada courts have

---

[5] The Nevada Supreme Court recognized the elements of equitable estoppel in *Cheqer, Inc. v. Painters & Decorators*, 655 P.3d 996, 999 (Nev. 1982).

[6] It is unclear whether unclean hands can be applied to a legal, as opposed to equitable claim in Nevada. In reviewing the authorities on this issue, however, this court has concluded that it is "doubtful." *D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.*, 570 F.Supp.2d 1262, 1273 (D.Nev. 2008). Nevertheless, both defenses are considered in the following discussion.

cautioned against applying in pari delicto where "'no serious moral turpitude is involved'") (quoting *Shimrak v. Garcia-Mendoza*, 112 Nev. 246, 912 P.2d 822, 826 (Nev.1996)); *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 182 P.2d 764, 767 (Nev. 2008) (two factors for applying unclean hands are (1) egregiousness of misconduct at issue and (2) seriousness of the harm caused by the misconduct); *D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.*, 570 F.Supp.2d 1262, 1272 (D.Nev. 2008) (unclean hands applies to situations where a party's conduct is unconscientious, unjust, or in bad faith).

The application of either of these doctrines turns on whether WFI actively participated in Eckersell's scheme to inflate the number of insurable entities. Without knowing that its behavior was illegal, WFI cannot be precluded as a matter of law from recovering on its misrepresentation claims. WFI now concedes that its actions were improper.[7] However, at the time it was applying for insurance coverage, WFI claims that due to the complexity of the FCIA programs, its officers had to rely on Eckersell's assurances that they had complied with federal law. In particular, WFI refers to the testimony of Rouston and O'Brien indicating that they had relied on Eckersell's expertise to structure the insurance program. Assuming *arguendo* that WFI believed it was permissible to insure multiple overlapping entities in this manner, the relevant issue is whether WFI's officers knowingly engaged in certain dishonest acts to prepare for this scheme, not the officers' beliefs regarding the structure of the scheme itself. WFI's repeated assertion that its officers "were not aware that they were engaging in any type of dishonest or wrong behavior when they signed up for insurance for entities which were apparently not insurable" therefore misses the point. (Doc. #138 at 47.)

After carefully reviewing the record and exhibits provided by the parties, the court finds that the evidence does not resolve whether WFI's officers knowingly falsified information in furtherance of the multiple entity insurance scheme. The WFI deponents never conceded that

---

[7] *See, e.g.*, Doc. # 138, Ex. 2, p. 110: 5-7 ("It was not an entity that we understand now could legitimately according to the regulations have a share in the crop.")

they were pursuing anything other than what they believed was a legitimate course of action to create and insure the various associated entities. ARMtech's recitation of expert testimony concluding that the applications submitted by WFI contained inaccurate information does little to clarify the issue. (Doc. #128 at 35-38.) In particular, reasonable jurors could disagree on whether Rouston knew that the employer identification number (EIN) applications reflected dishonest information. His deposition testimony indicates that while the applications did not contain accurate information at the time they were submitted, they were created in anticipation of future business activities. (Doc. #127, Ex. 2, p. 206: 10-17.) Similarly, while the business bank account applications submitted for the various insured entities contained false information concerning their structure, number of employees, and income, Rouston has denied creating or reviewing these documents. (Doc. #127, Ex. 2, p. 56.) With respect to the backdated leases between the entities, Rouston's testimony indicates that at the time they were created, WFI officers did not believe this presented a problem because it effected the original purpose for which the multiple-entity program had been created.[8] (Doc. #128, Ex. 6, p. 151: 13-24.) The various acts of misconduct cited by the defendants raise several questions as to the character of WFI's participation in procuring the insurance policies.

In essence, Defendants' motions require the court to make a credibility determination regarding whether Rouston was testifying truthfully or alternatively, to infer a culpable state of mind from WFI's purported misconduct. Given the complex circumstances presented by this case, resolution of this issue requires a careful weighing of the evidence. As such, the issue falls within the province of the jury and not the court on a motion for summary judgment. The

---

[8] Eckersell argues that WFI created various false leases and share crop agreements for three of the created entities. In support of this argument, it refers to a 42-page span of deposition testimony. The court will not wade through the record on Eckersell's behalf to find support for its contention. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774-75 (9th Cir.2002) (holding that "when a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court may in its discretion exclude the evidence").

motions for summary judgment based on the principles of unclean hands and *in pari delicto* are denied.

**C.  ADMINISTRATIVE REMEDIES**

ARMtech argues that Plaintiff must exhaust the available administrative remedies before filing suit in federal court. The following FCIA regulation outlines a process for resolving disputes relating to uninsured losses:

> (a) A person entering into a contract of crop insurance under these regulations who, as a result of a misrepresentation or other erroneous action or advice by an agent or employee of the Corporation.... [suffers a loss which is not insured]
>
> ...
>
> (b) (3) ....such insured shall be granted relief the same as if otherwise entitled thereto. Requests for relief under this section must be submitted to the Corporation in writing. The Corporation reviewing officers must, upon application by the person claiming relief under this section, refer such application to the appropriate official of the Corporation for determination as to whether to grant relief under this section.

7 C.F.R. § 457.6. This remedy must be exhausted before an insured files suit in federal court. 7 C.F.R. § 400.453.

It is apparent from reading the entire statute that this section applies to policies directly insured by the FCIC, not reinsured policies. This is because the next section of the statute provides an analogous arbitration mechanism for companies reinsured by the FCIC:

> (c) The reinsured companies *may* use arbitration panels established under contracts for reinsurance issued by them under the FCIC Act to grant relief under the same terms and conditions as contained in paragraphs (a) and (b) of this section, or *may* establish procedures to administratively handle relief in accordance with such terms and conditions.

*Id*. (emphasis added). For private insurers reinsured by the FCIC, the language of the statute indicates that such a remedy is permissive. ARMtech provides no evidence that the remedy was available to WFI during the crop seasons at issue in this lawsuit. Moreover, the record suggests that after discovering that the various associated entities were not insurable in 2004, WFI attempted to negotiate coverage with both the federal government and the insurers without any success. (Doc. #49 at 12.) Therefore, the court denies summary judgment based on a failure to exhaust administrative remedies.

**D.   JUSTIFIABLE RELIANCE**

A cause of action for misrepresentation requires (1) a knowingly false or reckless (2) misrepresentation (3) that was justifiably relied on by the plaintiff and that (4) this result was intended by the defendant. *Blanchard v. Blanchard*, 108 Nev. 908, 911, 839 P.2d 1320, 1322 (Nev. 1992). ARMtech argues that WFI's claims allege misrepresentations of law which are not actionable because regulations and policy terms under the FCIA are binding regardless of whether an insured party has actual knowledge of them. (Doc. #128 at 43.) In *Federal Crop Insurance Corp. v. Merrill*, an insured could not recover for crop losses under a federal insurance policy because the claims did not comply with the terms and conditions set forth in the applicable regulations, irrespective of a material misrepresentation by the insurance agent. 332 U.S. 380, 386, 68 S.Ct. 1, 92 L.Ed. 10 (1947). *See* 7 CFR § 457.8. *Merrill*, however, involved a claim directly against the FCIC. Based on this distinction, some courts have found the *Merrill* bar not to apply to actions against a private insurer. *See Farmers Crop Ins. Alliance v. Laux*, 442 F.Supp.2d 488, 491 n.4 (S.D.Ohio 2006); *Dailey v. Am. Growers Ins.*, 103 S.W.3d 60, 69 (Ky. 2003) (Cooper, J., concurring). Other courts, however, have found that insureds have constructive knowledge of the statutory policy terms regardless of whether their crops are insured by a private party or directly by the federal government. *Nobles v. Rural Comm. Ins. Servs.,* 122 F.Supp.2d 1290, 1303-04 (M.D.Ala. 2000); *Walpole v. Great Am. Ins. Co.*, 914 F.Supp. 1283, 1290 (D.S.C. 1994).

However, a preliminary issue must be resolved before the scope of the *Merrill* doctrine becomes relevant. ARMtech's argument assumes that WFI's claims are based exclusively on legal misrepresentations by Eckersell. Specifically, ARMtech contends that WFI relied on Eckersell's statement that "'the only requirement to create an insurable name or entity is to obtain a[n] EIN or tax identification number" in contradiction with FCIA regulations. (Doc. #128 at 41 (citing Doc. #66 at 10).) However, two material issues remain: (1) the factual question of whether WFI relied on any other statements by Eckersell, and (2) the legal question of whether such statements could appropriately be considered to be misrepresentations of law.

WFI offers evidence that it relied on various generalized assurances by Eckersell that it had complied with FCIA regulations and that the entities would pass an audit. This would suggest that there were still other misrepresentations besides those claimed by ARMtech that plausibly involved both law and fact. Assuming that is the case, the reliance would be distinguishable from the authorities cited by the defendants, which involved specific policy provisions.[9] Construing the evidence in the light most favorable to WFI, the non-moving party, the court is presented with a situation where an expert on crop-related insurance was given significant discretion and a fixed budget to structure an insurance program for a farming corporation. (Doc. #49 at 7.) WFI officers carried out various steps at the direction of Eckersell to establish and insure the various entities. Eckersell repeatedly assured WFI that they had complied with a sophisticated set of federal regulations. Assuming that WFI is charged with knowledge of the various FCIA regulations so as to prelude a claim purely based on misrepresentation *of law*, the evidence raises the possibility that other types of misrepresentation could survive supporting the claims. ARMtech has failed to carry its burden to demonstrate that it is entitled to judgment as a matter of law under such circumstances.

Finally, even granting that WFI should have reached a different conclusion regarding insurability of the entities, there is still a genuine issue of material fact whether it was justified in ultimately deferring to Eckersell's interpretation of the regulations. Nevada courts have emphasized that the justifiable reliance inquiry is a subjective analysis, based on the totality of the circumstances and the characteristics of the plaintiff. *See Bill Stremmel Motors*, 94 Nev. 131, 134, 575 P.2d 938, 940 (1978) (adopting Restatement (Second) of Torts § 552 (1977)

---

[9] The misrepresentation in *Walpole* involved the insurer's statements to the insured that he could sell his damaged crop and that any resulting proceeds would not offset the indemnity. *Walpole*, 914 F.Supp. at 1290. Applying the *Merrill* doctrine, the court held that an "adjuster's statements cannot be applied to extend coverage where there is none because the doctrine of estoppel cannot extend coverage beyond that authorized by the policy." *Id*. Similarly, at issue in *Nobles* was a single provision of a policy that excluded coverage for acreage that had not been planted and harvested in one of the previous three crop years. 303 F.Supp.2d at 1296. The plaintiff's claim arose not from a misrepresentation, but from the insurer's failure to inform. *Id*. In *Great American Insurance Co. v. Mills*, there was also no misrepresentation by the insurer. Rather, the farmer did not timely inform the insurance company that insured crops were now owned by a different entity than which originally procured the policy. 2008 WL 2250256, at *8 (D.S.C. May 29, 2008).

definition of negligent misrepresentation); Restatement (Second) of Torts § 545A cmt. b ("Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case...."). A jury is best suited to weigh the evidence and determine whether WFI can recover for relying on Eckersell's advice, perhaps against its better judgment.[10]

### E. CONTRACTUAL DEFENSES

ARMtech raises various contractual defenses to Plaintiff's claims, including: 1) the entities other than WFI did not have an insurable interest in the crops, 2) the entities failed to designate WFI as having an interest in the crop, which is required by the policy language; 3) WFI failed to comply with the policy terms to receive benefits for the 2004 crop year; and 4) WFI underreported its acreage for 2002 and 2003 and must therefore return the proceeds it received for those years. However, WFI's claims are based on tort theories of recovery, not contract. ARMtech therefore cannot raise any contractual provisions as a bar to recovery by WFI. Furthermore, ARMtech does not challenge the proposition that under Nevada law, it must elect to affirm or rescind the insurance contracts because it seeks inconsistent remedies.[11] *See Bergstrom v. Estate of DeVoe*, 109 Nev. 575, 578, 854 P.2d 860, 863 (Nev. 1993). Until it does so, the court cannot require WFI to return any proceeds it received under the policy.

### F. OBJECTIONS TO EVIDENCE

WFI argues that several exhibits presented by ARMtech in its motion for summary judgment lack proper authentication or were not disclosed during discovery. Because the court did not rely upon this evidence in deciding the present motions, it will not make an evidentiary ruling at this time.

///
///

---

[10] This is especially the case because the reliance issue involves the subsidiary question whether WFI had a duty to investigate because there were sufficient facts to alert WFI that its reliance was unreasonable. *See Collins v. Burns*, 103 Nev. 394, 397, 741 P.2d 819 (1987).

[11] WFI seeks both contractual damages and the return of all benefits paid under the policies. (Doc. #8 at 19 [counterclaims]; Doc. #128 at 14.)

## III. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment (Doc. Nos. 127 and 128) are **DENIED**.

DATED: May 13, 2009.

_____
UNITED STATES MAGISTRATE JUDGE