1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

8

| WINNEMUCCA FARMS, INC., | ) | 3:05-CV-385-RAM |
|---|---|---|
9
| Plaintiff, | ) | **MEMORANDUM DECISION** |
10
| | ) | **AND ORDER** |
11
| vs. | ) | |
12
| LANCE ECKERSELL, ECKERSELL | ) | |
| GROUP, INC., ARMtech INSURANCE | ) | |
13
| SERVICES, INC., GUIDEONE | ) | |
| SPECIALTY MUTUAL  INSURANCE | ) | |
14
| CO., WESTERN NATIONAL MUTUAL | ) | |
| INSURANCE CO., AMERICAN | ) | |
15
| AGRI-BUSINESS INSURANCE CO., | ) | |
| and DOES 1-30, inclusive, | ) | |
16
| | ) | |
| Defendants. | ) | |
17
| | ) | |

18        Before the court is Plaintiff Winnemucca Farms, Inc.'s (WFI) Motion for Partial

19  Summary Judgment. (Doc. #145.)[1]  Defendant ARMtech has opposed the motion (Doc. #153),

20  and Plaintiff has replied (Doc. #156).  After a thorough review, the court grants the motion in

21  part and denies the motion in part.

22                                          **I. BACKGROUND**

23         This action arises out of crop insurance purchased by WFI from the Defendant

24  ARMtech.  (Pl.'s Mot. for Summ. J. 3 (Doc. #145).)  WFI is a potato-farming corporation

25  owning approximately 20,000 acres of farmland in Winnemucca, Nevada. (*Id*.)  John O'Brien

26  is its President and Sam Routson is its Chief Administrative Officer and Legal Counsel.  (Doc.

27

28
_____

          [1] Refers to the court's docket number.

#128 at 10-11.)[2]  Defendant ARMtech consists of insurance companies that issued policies to WFI and its various associated entities. (Pl.'s Mot. for Summ. J. 3.)  Defendant Eckersell is an insurance agent who was acting as ARMtech's independent contractor at all relevant times. (Doc. #128 at 7-10.)

The policies involved in this case were issued by private insurers and reinsured by the Federal Crop Insurance Corporation (FCIC) as part of a government program established by the Federal Crop Insurance Act (FCIA).  Federal law defines and governs the sale, issuance, and service terms of the policies.  *Nobles v. Rural Comm. Ins. Servs.,* 122 F.Supp.2d 1290, 1295 (M.D. Ala. 2000).  The FCIC is a government corporation operating under the Department of Agriculture's Risk Management Agency (RMA), which is statutorily responsible for regulating the crop insurance industry.  *In re Peanut Crop Ins. Lit.*, 524 F.3d 458, 462 (4th Cir. 2008). The purpose of the crop insurance program is to protect farmers from the risk of drought, flood, and other natural disasters.  *Id.* (citing 7 U.S.C. § 1508(b)).  Basic coverage insures farmers against catastrophic risk and losses exceeding 50% of the crop's normal yield at 55% of the crop's expected market price.  7 U.S.C. § 1508(b); 7 C.F.R. § 402.1.  Farmers may purchase additional coverage to insure a greater percentage of their expected yields.  7 U.S.C. § 1508(c).

WFI claims that Eckersell and ARMtech erroneously advised it to create a network of multiple agricultural entities to maximize its insurance recovery in the event of a crop loss. The complaint alleges that this structure created a favorable premium and fee arrangement for Eckersell and the insurance company defendants.  (Doc. #23-1 at 3.)  According to WFI, throughout the course of its dealings with him, Eckersell repeatedly assured its officers that these various entities had been properly created and had an insurable interest in the crop. (Pl.'s Mot. for Summ. J. 3.)  WFI claims that Eckersell had it purchase insurance for entities that

---

[2] The facts are taken primarily from ARMtech's motion for summary judgment (Doc. #128) and WFI's amended complaint (Doc. #23), as well as the motions currently before the court.

were not insurable and structured the policies in violation of the crop insurance regulation. (Pl.'s Mot. for Summ. J. 3.)

ARMtech asserts multiple counterclaims against WFI, including insurance fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, civil conspiracy, unjust enrichment, deceptive trade practices, and obtaining insurance by false pretense. (Def.'s Answer to Am. Compl. 10-14 (Doc. #36).)

Defendant Eckersell initially filed a summary judgment motion on November 5, 2006 (Doc. #49), in which Defendant ARMtech joined (Doc. #51). Defendant ARMtech also filed a motion for summary judgment on November 15, 2006 (Doc. #55), in which Defendant Eckersell joined. The court, the Honorable Brian E. Sandoval presiding, denied the motions, finding that there remained material issues of fact with respect to WFI's first two claims and that the last claim could not be adjudicated based on the record available. (Doc. #75.) Defendant Eckersell filed a Supplemental Motion for Partial Summary Judgment on the third claim regarding indemnification, which was granted (Doc. #78.) Subsequently, Defendants Eckersell and ARMtech filed motions for summary judgment (Doc. #127, 128.) In an order issued May 14, 2009, the court denied both motions. (Doc. #150.) On May 12, 2009, just prior to the court's order denying Defendants' motions for summary judgment, Plaintiff filed its instant motion seeking partial summary judgment on Defendant ARMtech's counterclaims for insurance fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, civil conspiracy, unjust enrichment, deceptive trade practices, and obtaining insurance by false pretense. (Pl.'s Mot. for Summ. J. 1) In light of the court's findings in denying Defendants' motions for summary judgment, Plaintiff no longer pursues its claim for summary judgment on the issues of breach of contract and breach of the implied covenant of good faith and fair dealing. (Pl.'s Reply 3 (Doc. #156).)

## II. LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no

dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of

proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

## III. DISCUSSION

### A.   INSURANCE FRAUD

ARMtech alleges in its first counterclaim that WFI committed insurance fraud as defined by Nevada Revised Statutes (NRS) § 686A.2815, including but not limited to NRS § 686A.2815(1), (2), (3), (4), (6), (8), and NRS § 686A.290. (Def.'s Answer to Am. Compl. 10.) WFI argues that ARMtech's claim fails as a matter of law because no private right of action exists for insurance fraud under NRS §§ 686A.2815 or 686A.290. (Pl.'s Mot. for Summ. J. 5.)

First, although NRS § 686A.310 provides for an private right of action, ARMtech may not pursue a cause of action under this provision. NRS § 686A.310(2) provides that "[i]n addition to any rights or remedies available to the commissioner, an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice." The statute expressly grants insureds a private right of action against insurance companies that violate this statute. Here, ARMtech is not an insured, but rather is an insurer. Thus, the private right of action under NRS § 686A.310(2) is not available to ARMtech.

Second, ARMtech argues that no authoritative court decision forecloses a private right of action on behalf of the insurer against the insured under the Nevada Insurance Code. (Def.'s Opp. to Summ. J. 3 (Doc. #153).) ARMtech contends that the court should imply a private right of action to an insurer based on the legislative intent behind the Nevada Insurance Code codified at NRS Title 57, Chapters 679A through 697. (*Id*. at 5.) ARMtech acknowledges that the Nevada Insurance Code only "expressly provides for criminal and civil penalties," but nevertheless maintains that a private right of action can be implied for insurers. (*Id*. at 6.)

Under Nevada law, "[w]hether a private cause of action can be implied is a question of

5

legislative intent." *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 100 (Nev. 2008).  In the absence of plain, clear language, a court must ascertain the legislature's intent by examining the entire statutory scheme, reason, and public policy. *Id.* Three factors guide this inquiry: "(1) whether the plaintiffs are 'of the class for whose [e]special benefit the statute was enacted'; (2) whether the legislative history indicates any intention to create or to deny a private remedy; and (3) whether implying such a remedy is 'consistent with the underlying purposes of the legislative [sch]eme.'" *Id.* (internal quotations and citations omitted).  Ultimately, "the determinative factor is always whether the Legislature intended to create a private judicial remedy." *Id.*  Without this intent, courts may not create a cause of action "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).)  "[T]he absence of an express provision providing for a private cause of action to enforce a statutory right strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy." *Id.*

ARMtech argues that the court should follow the reasoning in *Crystal Bay General Improv. Dist. v. Aetna Casualty & Surety Co.*, 713 F. Supp. 1371 (D. Nev. 1989) to find an implied right of action for an insurer against an insured.  (Def.'s Opp. to Summ. J. 6-8.)  In *Crystal Bay*, the court held that the legislative intent behind the Nevada Unfair Insurance Practices Act (NRS §§ 686A.010 *et seq.*) allowed it to imply a private right of action to the insured for breaches of the list of unfair practices in settling claims. *Id.* at 1376.  The court reasoned that a private right of action "is reasonably implied inasmuch as [the Act] which is patently for the benefit of insured persons would be just a lot of words if the only remedy is an action by the commissioner under NRS 686A.160 for injunctive relief." *Id.*  In support of its conclusion, the court found that the 1987 legislative amendment to the Act and legislative history indicated that the Act provided for a private right of action prior to the amendment. *Id.*  The 1987 amendment expressly provides a private right of action for an insured. *Id.*  The sponsor of the legislation stated that the amendment "would benefit the people of Nevada by

*codifying existing law* that was recognized as common law in the sense of the right of a person to sue his insurance company for an act of bad faith." *Id*. (emphasis in original). Thus, the court concluded that the existing law before the amendment provided for an implied private right of action. Additionally, the court found that the statute "was intended for the benefit of the insured" and that "[e]very subdivision of [NRS § 686A.310] on its face announces a requirement for the protection of the insured." Finally, the court found that the absence of another section providing civil liability weighed in favor of finding a private right of action. *Id*. at 1377. The court noted that where other courts declined find an implied private right of action, they relied on the implicit indication of legislative intent inherent in the legislature's choice to expressly provide civil liability in one section and failing to do so in the section immediately following. *Id.*

This case is distinguishable from *Crystal Bay* in several respects. ARMtech contends that under NRS Title 57 the court should imply a private right of action for the insurer because (1) the purpose of the Nevada Insurance Code is to "protect policyholders and all having an interest under insurance policies," and (2) the Code is designed to "insure policyholders, claimants, and insurers are treated fairly and equitably." (Def.'s Opp. to Summ. J. 5-6.) ARMtech also argues that the lack of resources of the insurance commissioner weighs in favor of finding a private right of action for the insurer. (*Id.* at 6.) Last, ARMtech asserts that the 2001 amendment to NRS § 686A.292, which expressly includes an insurer as a victim for the purposes of restitution in the case of insurance fraud, indicates that an insurer should be able to recover damages. (*Id.* at 7.) None of the evidence to which ARMtech points is nearly as strong as the evidence of legislative intent present in *Crystal Bay*. Neither a subsequent amendment creating an express private right of action for an insurer exists nor legislative history indicating that the legislature believes that existing law provides a right of action for an insurer to sue an insured. In fact, the legislature's addition of a private right of action for insureds in NRS § 686A.310(2), without a simultaneous addition of private right of action for

7

insurers, cuts against finding a private right of action for insurers.  In sum, while some of the provisions of NRS Title 57 indicate that insurers should be treated fairly, equitably, and have protected interests, none of the evidence cited by ARMtech is so strong as to denote a legislative intent to imply a private right of action for insurers.  Because an implied private right of action for insurers against insureds does not exists under NRS Title 57, ARMtech's claim for insurance fraud fails as a matter of law.  Thus, WFI is entitled to summary judgment on ARMtech's first counterclaim for insurance fraud.

**B.   CIVIL CONSPIRACY**

ARMtech alleges in its fifth counterclaim that WFI conspired with "at least RDO, Nevada, U.S. Foods Inc., and the officers, directors and shareholders of those corporations, including but not limited to, Ronald D. Offcut, Allan Knoll and John O'Brien." (Def.'s Opp. to Summ. J. 15; Def.'s Answer to Am. Compl. 12.)  WFI argues that ARMtech fails to establish a prima facie case of civil conspiracy.  (Pl.'s Mot. for Summ. J. 17-22.)

"An actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Hilton Hotels Corp. v. Butch Lewis Prods.*, 862 P.2d 1207, 1210 (Nev. 1993) (citing *Sutherland v. Gross*,  772 P.2d 1287, 1290 (Nev. 1989)).

WFI contends that ARMtech fails to show that WFI acted in concerted action with another entity or individual. (Pl.'s Reply 11-14 (Doc. #156).)  WFI argues that it is not legally possible for a civil conspiracy to exist between a corporation and its employees, agents, officers, or directors.  (*Id*. at 11-12.)  According to WFI, because RDO, Nevada is a 94% shareholder in WFI, and WFI officers also serve as shareholders in RDO, the two entities should be treated as a parent company and a wholly owned subsidiary.  (*Id*. at 12-13 n. 6.)  WFI is correct that a wholly owned subsidiary and a parent company have no separate legal existence, and therefore, it is impossible for civil conspiracy to occur between them.  *Laxalt v. McClatchy*, 622 F. Supp.

1   737, 745 (D. Nev. 1985). However, that principle is inapplicable here because WFI is not a
2   wholly owned subsidiary of RDO, Nevada. Although RDO, Nevada may be a controlling
3   shareholder in WFI, the two entities are nevertheless legally distinct, and WFI is not "wholly
4   owned" by RDO. Don Nakamura, Sam Routson, and Sam Huffman each own stock in WFI in
5   addition to RDO. (Doc.#128, Ex. 3 at 13.) RDO is 70% owned by "the Offcut Group" and 30%
6   owned by John O'Brien. (*Id*.) Therefore, WFI is not a wholly owned subsidiary of RDO that has
7   a complete unity of interest. Furthermore, different individuals are involved in each of the two
8   entities. ARMtech alleges that false Lease and Sharecrop Agreements between WFI, RDO, and
9   U.S. Foods, Inc. were drafted and submitted to the FSA office. (Def.'s Opp. to Summ. J. 15
10  (citing Doc.#128, Ex. 6 at 149-151; Doc. #127, Ex. 4-7).) Thus, ARMtech submits evidence
11  satisfying the first element of a prima facie case that WFI and persons outside of WFI acted
12  together.

13       As to whether WFI acted with the requisite intent for civil conspiracy, ARMtech is
14  correct that the court has previously concluded that a genuine issue of material fact exists as
15  to "whether WFI's officers knowingly falsified information in furtherance of the multiple entity
16  insurance scheme." (Doc. #150 at 7.) The same issue of fact is presented here with respect to
17  ARMtech's civil conspiracy claim.

18       Last, ARMtech alleges that WFI and its co-conspirators acted with the unlawful objective
19  to obtain Federal Crop Insurance through concealment, omissions and misrepresentation.
20  (Def.'s Opp. to Summ. J. 16.) Therefore, ARMtech presents evidence of a prima facie case of
21  civil conspiracy. Because genuine issues of material fact exist, summary judgment is not
22  appropriate.

23  **C.   UNJUST ENRICHMENT**

24       In its sixth counterclaim, ARMtech claims that WFI received the benefit of ARMtech's
25  performance "under the contract," and that WFI has been unjustly enriched by its receipt of
26  ARMtech's performance. WFI asserts that ARMtech's unjust enrichment claims fails as a
27  matter of law because it is based on the alleged breach of an express contract. (Pl.'s Mot. for

28

9

Summ. J. 23.)

To state a claim for unjust enrichment under Nevada law, a plaintiff must allege (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value. *LeasePartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997). "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id*. However, under Fed. R. Civ. P. 8(d)(2), "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Thus, a party may state a claim for breach of contract, premised on the existence of a valid contract, and state a claim for unjust enrichment, premised on the non-existence of a valid contract.

Here, ARMtech fails to properly plead alternative claims because its unjust enrichment claim is specifically based on ARMtech's performance "under the contract." (Def.'s Answer to Am. Compl. 12.) "An unjust enrichment claim cannot be predicated upon an express agreement." *Clark v. Metro. Life Ins. Co.*, 2009 U.S. Dist. LEXIS 17717, *16, 2009 WL 536830, *6 (D. Nev. Mar. 2, 2009). By its very terms, ARMtech's claim for unjust enrichment refers to the existence of an express agreement. An action for unjust enrichment is not available when the allegations in the claim point to the presence of an express, written contract. *See Clark*, 2009 U.S. Dist. LEXIS 17717, *16, 2009 WL 536830, *6 (dismissing a claim for unjust enrichment where the plaintiff's unjust enrichment claim, standing alone, failed to state a claim because her entire complaint was predicated on an express agreement). Because ARMtech's unjust enrichment claim is specifically predicated on an express agreement, it fails, standing alone, to state a claim. Accordingly, WFI is entitled to summary judgment on ARMtech's sixth counterclaim for unjust enrichment.

10

**D.   DECEPTIVE TRADE PRACTICES**

In its seventh counterclaim, ARMtech alleges that WFI committed a deceptive trade practice as defined under NRS Chapter 598. (Def.'s Answer to Am. Compl. 12.) WFI contends that ARMtech's deceptive trade practices claim fails as a matter of law because ARMtech is not a "victim" within the meaning of NRS § 41.600. (Pl.'s Mot. for Summ. J. 25-27.)

NRS chapter 598 "generally provides for a public cause of action for deceptive trade practices." *Nev. Power Co. v. Eighth Judicial Dist. Court*, 102 P.3d 578, 583 n.7 (Nev. 2004). Under NRS § 41.600, however, a private cause of action is conferred on a "person who is a victim of consumer fraud . . . [which includes] . . . a deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." *Id*. (citing NRS § 41.600(2)(d))(internal quotations omitted). NRS § 41.600 does not define the term "victim," and no Nevada case law defines the term. Thus, this court must predict how the Nevada Supreme Court would decide the issue "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Arizona Elec. Power Co-op. v. Berkely*, 59 F.3d 988, 991 (9th Cir.1995).

ARMtech argues that the court should consider it a "victim" based on NRS § 686A.292, which provides that "[a]n insurer or other organization, or any other person, subject to the commissioner pursuant to this Title shall be deemed to be a victim for the purposes of restitution in a case that involves insurance fraud or that is related to a claim of insurance fraud." NRS § 686A.292(3). The court finds this argument unpersuasive. Even though NRS § 686A.292 "deems" an insurer to be a "victim," it does not actually define the term "victim." NRS § 686A.292 merely declares an insurer to be a victim for the limited and specific purpose of restitution where a person has been convicted of insurance fraud. NRS § 686A.292. ARMtech attempts to borrow this broad definition and apply it to an entirely different context involving deceptive trade practices.

In *Weaver v. Aetna Life Ins. Co.*, 2008 U.S. Dist. LEXIS 93658, at *15, 2008 WL 4833035, at *5-6 (D. Nev. Nov. 3, 2008), this court addressed the issue. The court looked to

11

*Igbinovia v. State*, 895 P.2d 1304 (Nev. 1995), in which the Nevada Supreme Court defined "victim" as the term is used in NRS § 176.033(1)(c). *Id.* NRS § 176.033(1)(c) authorizes restitution for a crime victim. Although noting that the term was undefined by statute, the *Igbinovia* court found that "the word 'victim' has commonly-understood notions of passivity, where the harm or loss suffered is generally unexpected and occurs without the voluntary participation of the person suffering the harm or loss." *Igbinovia*, 895 P.2d at 1306, 1308. The *Igbinovia* court held that the Las Vegas Metropolitan Police Department was not a "victim" under NRS § 176.033 that could receive restitution for the money used to purchase illegal drugs in a sting operation. *Id.* at 1309.

In *Igbinovia*, the Nevada Supreme Court focused on the conduct of the police department in securing evidence through sting operations, and the lack of passivity attendant with such conduct, in determining that the police department was not a "victim." *Igbinovia*, 895 P.2d at 1308-09. The *Igbinovia* court contrasted its approach with a statutory scheme that specifically defined "victim" as "any person whom the court determines has suffered pecuniary damages as a result of defendant's criminal activities." *Id.* at 1309. The court stated that in the "absence of clear legislative markers leading [it] to such a broad definition," it could not ignore the active role played by police departments in obtaining evidence leading to conviction. *Id.* Here, NRS § 41.600 also does not provide a statutory definition for the term "victim." The court concludes that the Nevada Supreme Court would not adopt such a broad definition of the term "victim" that would simply deem an insurer a victim without clear legislative markers. Rather, in line with the reasoning of the *Igbinovia* court, the court looks to ARMtech's conduct to determine if it is a "victim" under NRS § 41.600.

WFI argues that Lance Eckersell and Randy Olson's involvement in the fraudulent scheme precludes ARMtech from qualifying as a "victim." (Pl.'s Mot. for Summ. J. 26-27.) WFI asserts that Lance Eckersell, ARMtech's agent, and Randy Olson, ARMtech's employee, were active participants in the scheme. (Pl.'s Reply 18.) According to WFI, because ARMtech was an active participant through its agent and employee, it is not a "victim," and its claim for

1   deceptive trade practices fails as a matter of law.  (*Id.* at 19.)

2       Because genuine issues of material fact exist as to Eckersell and Olson's level of

3   participation in the fraudulent scheme, summary judgment is not appropriate.  ARMtech

4   argues that John O'Brien, WFI's President, admitted that Eckersell did not act fraudulently

5   when he testified that "Lance acted in good faith.  I think he believed that these names and

6   these tax IDs were right . . . he acted to the best of his ability to do this right." (Def.'s Opp. to

7   Summ. J. 19.)  WFI, on the other hand, contends that numerous contradictory statements

8   made by Sam Routson, John O'Brien, and other employees of WFI exist alleging Eckersell's

9   leadership of the fraudulent scheme.  (Pl.'s Reply 17 n. 7.)  With regard to Randy Olson,

10  ARMtech asserts that Olson made absolutely no representations to WFI and played absolutely

11  no role in the structuring of WFI's crop insurance.  (Def.'s Opp. to Summ. J. 19 (referencing

12  Doc. #143 at 13).)  ARMtech argues that the testimony of Routson, O'Brien, Dan Nakamura,

13  and Linda Gascon demonstrates Olson's lack of involvement. (Doc. #143 at 13-14.) WFI claims

14  that the documentary and testimonial evidence shows that Olson's behavior extended far

15  beyond the traditional claims adjustor role and establishes Olson as an active participant in the

16  fraudulent scheme.  Thus, the evidence indicates a genuine issue of material fact precluding

17  summary judgment on ARMtech's seventh counterclaim for deceptive trade practices.

18  **E.    OBTAINING INSURANCE BY FALSE PRETENSE**

19      In its eighth counterclaim, ARMtech claims that WFI knowingly and designedly, by false

20  pretense, obtained various insurance polices from ARMtech with the intent to cheat and

21  defraud ARMtech in violation of NRS § 205.380.  (Def.'s Answer to Am. Compl. 13.)  WFI

22  argues that it is entitled to summary judgment because NRS § 205.380 is a criminal statute that

23  does not provide a private right of action by a civil plaintiff alleging false pretenses. (Pl.'s Mot.

24  for Summ. J. 24-25.)

25      NRS § 205.380 provides  in relevant part:

26      1. A person who knowingly and designedly by any false pretense obtains from
        any other person any chose in action, money, goods, wares, chattels, effects

27      or other valuable thing, including rent or the labor of another person not his

28

employee, with the intent to cheat or defraud the other person, is a cheat, and, unless otherwise prescribed by law, shall be punished:

(a) If the value of the thing or labor fraudulently obtained was $250 or more, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, or by a fine of not more than $10,000, or by both fine and imprisonment. In addition to any other penalty, the court shall order the person to pay restitution.

(b) If the value of the thing or labor fraudulently obtained was less than $250, for a misdemeanor, and must be sentenced to restore the property fraudulently obtained, if it can be done, or tender payment for rent or labor.

NRS § 205.380 is a criminal statute.  In response to WFI's argument, ARMtech puzzlingly responds that it "hold[s] in abeyance [its] claim for obtaining insurance by false pretenses pending the 'imminent indictment' of WFI principals." (Def.'s Opp. to Summ. J. 18.) Whatever the import of ARMtech's response, WFI is correct that NRS § 205.380 is a criminal statute that does not create a private right of action.  ARMtech cites no authority to the contrary.  Therefore, ARMtech has no standing to bring any claim under NRS § 205.380. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  WFI will be granted summary on ARMtech's eighth cause of action for obtaining insurance by false pretense.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. #145) is **GRANTED** in part and **DENIED** in part as follows:

1) Summary judgment on ARMtech's first, sixth, and eighth counterclaims is **GRANTED**.

2) Summary judgment on ARMtech's fifth and seventh counterclaims is **DENIED**.

DATED: March 31, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

14